1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Penne Hauk, | No. CV-18-08061-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Penne Ann Hauk's Applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 23, "Def.'s Br."), and Plaintiff's Reply (Doc. 26, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, R.) and now reverses the Administrative Law Judge's decision (R. at 15–27) as upheld by the Appeals Council (R. at 1–3).

**I.    BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on April 3, 2014 (R. at 15) and, a day later, an application for Supplemental Security Income Benefits (R. at 15) for a period of disability beginning August 21, 2012 (R. at 15). Plaintiff's claims were denied initially on August 26, 2014 (R. at 15), and upon reconsideration on April 17, 2015

(R. at 15). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on February 22, 2017. (R. at 40–77.) On May 24, 2015, the ALJ denied Plaintiff's Applications. (R. at 15–27.) On January 23, 2018, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–3.) On March 19, 2018, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff has the following impairments: osteoarthritis, fibromyalgia, chronic pulmonary heart disease, status post hammertoe surgery, emphysema, chronic obstructive pulmonary disease, depression, attention deficit disorder, and anxiety. (R. at 17–18.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. at 20.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." (R. at 20.) Based on a Vocational Expert's ("VE") answers to hypothetical questions, the ALJ concluded that Plaintiff could perform her past work as a screen printer and screen printer helper and is not disabled under the Act. (R. at 26.)

**II.    LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider

the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by rejecting the medical opinions of Plaintiff's treating physicians, instead relying on the opinion of an examining physician; and (2) the ALJ failed to provide clear and convincing

reasons for rejecting Plaintiff's testimony regarding the severity of her symptoms and limitations. (Pl.'s Br. at 2.)

### A. The ALJ Erred by Giving Little Weight to the Medical Opinions of Plaintiff's Treating Physicians and Instead Giving Great Weight to the Opinion of an Examining Physician

The ALJ determined that Plaintiff is not presently engaged in substantial gainful activity and, although she suffers from severe impairments, they are not equal to those listed in 20 C.F.R. Part 404. The dispute comes at the ALJ's assessment of Plaintiff's RFC, in which the ALJ found that, based on the entire record, Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). Specifically, the ALJ found Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand six hours; walk six hours; frequently stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; and never be around unprotected heights or moving mechanical parts. The Court focuses on this assessment in concluding that the ALJ erred by relying on the opinion of an examining physician, rather than those of Plaintiff's treating physicians, in making her RFC determination.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Given this hierarchy, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Normally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." *Lester*, 81 F.3d at 831. But where "the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating physician may itself be substantial evidence." *Andrews*, 53 F.3d at 1041. When that is the case, an ALJ can satisfy his burden for specific and legitimate reasons "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir. 1989); *see also Embrey*, 849 F.2d at 421–22 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Here, the ALJ failed to provide specific, legitimate reasons based on substantial evidence for rejecting the opinions of Plaintiff's treating physicians in favor of the opinion of an examining physician, Dr. McPhee.

Dr. Stonecipher served as Plaintiff's primary care physician, whom Plaintiff saw between March 2013 and November 10, 2015, with an undetermined lapse of treatment prior to November 2014. (R. at 451, 930–91.) Dr. Stonecipher reached the following diagnoses of Plaintiff: migraines, pericarditis, arthritis, fatigue, attention deficit hyperactivity disorder, osteoporosis, and hypertension. (R. at 712.) Based on these diagnoses and their continuous treatment relationship, on June 4, 2015, Dr. Stonecipher concluded that in an eight-hour work day Plaintiff could carry less than five pounds frequently; stand two hours; sit two hours; and never climb, balance, stoop, kneel, crouch, or crawl. (R. at 712.)

On March 6, 2013, Dr. Stonecipher referred Plaintiff to a rheumatologist, Dr. Epstein, after Plaintiff complained of diffuse pain in her feet, hand, joints, and soft tissue. (R. at 451.) There, Dr. Epstein made the following musculoskeletal findings:

> [M]ild degenerative changes [in] small joints of the hands. . . . [M]ild tenderness in the PIP joints without synovitis. Grip is normal. There appear[s] to be degenerative changes of the MTP joints without obvious synovitis but with moderate tenderness. Otherwise, no synovitis or tenderness [in the] small joints of the hands, wrists, elbows, shoulders, hips, knees, ankles, or MTPs. [A]ll joints with full range of motion. [C]ervical spine and lumbosacral spine have mild decreased range of motion all planes.

(R. at 453.) Despite these findings, Dr. Epstein diagnosed Plaintiff with fibromyalgia after Plaintiff demonstrated eighteen of eighteen classic tender points consistent with fibromyalgia. (R. at 453.) In a follow-up appointment two months later, Dr. Epstein noted he "[felt] [Plaintiff] was totally and permanently disabled for any occupation given the severity of her symptoms and the length of time she ha[d] had them." (R. at 457.) Further, Dr. Epstein "[didn't] feel additional medicines [would] be of any help [to Plaintiff]." (R. at 457.)

A second primary care physician, whom Plaintiff saw on three different occasions between November 2016 and December 2016, came to similar conclusions as Drs. Stonecipher and Epstein regarding Plaintiff's physical limitations. (R. at 894–906.) Dr. Shea reached the following diagnoses of Plaintiff: headaches, foot pain, and right hip pain. (R. at 387.) And, according to Dr. Shea, Plaintiff's "feet [were] very limited." (R. at 387.) Based on these diagnoses and their continuing relationship, on December 15, 2016, Dr. Shea concluded that in an eight-hour workday Plaintiff could carry less than five pounds only occasionally; stand two hours; sit four hours; and never climb, balance, stoop, kneel, crouch, or crawl. (R. at 387.) Additionally, Dr. Shea noted that Plaintiff would need to elevate her legs every one to two hours throughout the workday. (R. at 387.)

On the other hand, Dr. McPhee, an examining physician, concluded Plaintiff would be capable of medium exertion after she recovered from her foot surgeries. Dr. McPhee examined Plaintiff on August 7, 2014 (R. at 623) and gave his opinion in two parts. Initially, Dr. McPhee observed hammer toes on the second through fifth toes on each of

Plaintiff's feet and noted that Plaintiff planned to have surgery on both feet to correct the condition. (R. at 624.) Prior to surgery, Dr. McPhee opined that in an eight-hour workday Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and walk for four hours total; climb ramps and stairs occasionally; frequently stoop, kneel, crouch, and crawl; sit for an unlimited period; reach, handle, finger, or feel without limitation; and never climb ladders, ropes, or scaffolds. (R. at 625.) Dr. McPhee speculated that after Plaintiff recovered from her surgeries, she would be able to stand, walk, and lift without limitation. (R. at 625.) In fact, he believed she would be able to lift fifty pounds occasionally and twenty-five pounds frequently throughout an eight-hour workday. (R. at 625.)

      The ALJ assigned "little weight" to the opinions of Drs. Stonecipher and Shea, and she made no mention of Dr. Epstein's opinion in her decision. Conversely, although the ALJ rejected the first part of Dr. McPhee's opinion, she assigned "great weight" to the second part. The ALJ provided the following reasons for rejecting the opinions of Plaintiff's treating physicians in favor of the second part of Dr. McPhee's opinion: First, in Dr. McPhee's physical examination of Plaintiff, Dr. McPhee found Plaintiff had "full range of motion with normal strength in the bilateral upper and lower extremities"; "normal deep tendon reflexes throughout and great toes were down going on the Babinski's reflex"; and "normal gait and station." (R. at 24.) Second, although Drs. Stonecipher and Shea found Plaintiff had functional loss in her hips, knees, hands, shoulders, and arms, neither provided an explanation for the degree of functional loss. (R. at 25.) Third, Drs. Stonecipher and Shea found that Plaintiff suffered from migraines (or headaches), but according to the ALJ, there is no evidence of migraines or headaches in the record, and Plaintiff did not allege either as an impairment. (R. at 25.) Lastly, Dr. Stonecipher's records do not describe any abnormal musculoskeletal findings, hand or wrist findings, or joint findings; rather, according to the ALJ, Dr. Stonecipher merely noted that Plaintiff was seeing a rheumatologist. (R. at 25.)

Full range of motion and normal strength in the bilateral upper and lower extremities, normal reflexes, and normal gait and station are not inconsistent with the unique nature of fibromyalgia, nor, as Dr. McPhee's opinion shows, do they demonstrate Plaintiff is capable of medium exertion. Those suffering from fibromyalgia can have normal muscle strength, sensory functions, and reflexes. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id.* (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001)). Accordingly, in citing the above clinical observations, the ALJ fails to account for the unique symptoms of fibromyalgia as the Ninth Circuit directs. Moreover, despite making these clinical observations during his examination of Plaintiff, Dr. McPhee concluded that Plaintiff was limited to lifting twenty pounds occasionally and ten pounds frequently and four hours total of standing and walking. Therefore, given the unique diagnosis in this case, the above clinical observations are not a legitimate reason for rejecting the opinions of Plaintiff's treating physicians.

Dr. Stonecipher noted that Plaintiff suffered from migraines, pericarditis, arthritis, fatigue, attention deficit hyperactivity disorder, osteoporosis, and hypertension (R. at 712), and Dr. Shea noted that Plaintiff suffered from headaches, foot pain, and right hip pain (R. at 387). The bases for these diagnoses are detailed throughout the record, and as the ALJ found, these impairments could reasonably be expected to cause the symptoms Plaintiff has alleged. (R. at 22.) Moreover, Drs. Stonecipher and Shea have seen Plaintiff for numerous in-person visits over an extended period of time; for these reasons, their subjective judgments are important and properly play a part in their medical evaluations. *Bowen*, 849 F.2d at 422. Indeed, because of her continuing relationship with Plaintiff, Dr. Shea had the benefit of evaluating Plaintiff after Plaintiff underwent surgery on her right foot in August 2016 to correct her hammertoes, (R. at 1044); thus, unlike Dr. McPhee, Dr. Shea was not forced to speculate as to Plaintiff's physical condition post surgery. Accordingly, Drs. Stonecipher and Shea did not fail to provide an explanation for the

degree of functional loss they assert Plaintiff has suffered, and therefore, this is not a legitimate reason based on substantial evidence for rejecting their opinions.

The record contains numerous instances in which Plaintiff complained of migraine headaches. (R. at 743, 832, 896, 1030, 1034, 1040, 1154, 1208.) As a result, the ALJ should not have rejected the opinions of Drs. Stonecipher and Shea for considering Plaintiff's migraine headaches.

Finally, the ALJ failed to allot the opinion of Dr. Epstein, a rheumatologist, its appropriate weight. "[T]he opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of nonspecialists." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Rheumatologists specialize in connective tissue, joint, and autoimmune impairments, like fibromyalgia. Accordingly, without specific, legitimate reasons based on substantial evidence in the record for rejecting it, the ALJ should have considered Dr. Epstein's opinion that "[Plaintiff] was totally and permanently disabled for any occupation given the severity of her symptoms and the length of time she ha[d] had them." (R. at 457.)

For these reasons the ALJ erred by giving little, or no, weight to the medical opinions of Plaintiff's treating physicians.

**B.     The ALJ Erred by Discrediting Plaintiff's Symptom Testimony**

Plaintiff also argues that the ALJ erred by rejecting her symptom testimony. (Pl.'s Br. at 14–19.) Although credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal citations omitted).

Although the ALJ found that Plaintiff's fibromyalgia is a severe medically determinable impairment, she discounted Plaintiff's testimony regarding her symptoms because a physical examination noted "mostly normal functionality." (R. at 22.) "Typical symptoms [of fibromyalgia] include 'chronic pain throughout the body, multiple tender

points, fatigue, stiffness, and a pattern of sleep disturbance than can exacerbate the cycle of pain and fatigue.'" *Revels*, 874 F.3d at 656 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)). As noted above, those suffering from fibromyalgia can have "muscle strength, sensory functions, and reflexes [that] are normal." *Id.* (alteration in original) (quoting *Rollins*, 261 F.3d at 863). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id.* (quoting *Rollins*, 261 F.3d at 863). Indeed, Dr. Epstein, Plaintiff's treating rheumatologist, noted the exact same normal functionality just prior to concluding Plaintiff was totally and permanently disabled for any occupation. *See Rollins*, 261 F.3d at 863 ("One of the most striking aspects of the disease is the absence of symptoms that a lay person may ordinarily associate with joint and muscle pain."). Accordingly, the physical findings listed to discredit Plaintiff's symptom testimony are not clear and convincing reasons for rejecting the Plaintiff's testimony regarding the severity of her fibromyalgia symptoms.

Lastly, the record is replete with Plaintiff's complaints about pain, and in at least one instance, Plaintiff told her physical therapist that "she has not been able to get out of bed most days as of late due to fibromyalgia and bilateral hip pain" (R. at 543). Therefore, the ALJ was wrong to discount Plaintiff's testimony with respect to her fibromyalgia symptoms based on a lack of corroboration with the medical record.

### C. The Credit-As-True Rule Applies

The credit-as-true rule only applies in cases that raise "rare circumstances" which permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and

ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

In this case, the credit-as-true rule applies. As the Court discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Plaintiff's treating physicians—who identified limitations inconsistent with Plaintiff's ability to perform sustained work—and Plaintiff's symptom testimony. If this evidence is properly credited, the Court sees no significant conflicts or ambiguities that are left for the ALJ to resolve. Moreover, considering the record as a whole, including Plaintiff's testimony as to her physical limitations—which the Court credits as a matter of law—and the VE's testimony that an individual incapable of working a total of eight hours in a day could not obtain full-time work in a competitive environment (R. at 81), the Court is left with no doubt that Plaintiff is disabled under the Act. *See Garrison*, 759 F.3d at 1022–23; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 & n.12 (9th Cir. 2007).

## IV. CONCLUSION

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court must reverse the SSA's decision denying Plaintiff's Applications for Disability Insurance Benefits and Supplemental Security Income under the Act and remand for a calculation of benefits.

**IT IS THEREFORE ORDERED** reversing the May 24, 2017, decision of the Administrative Law Judge, (R. at 15–27), as upheld by the Appeals Council on January 23, 2018 (R. at 1–3). The Court remands this matter for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

. . . .

. . . .

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 18th day of June, 2019.

_____
Honorable John J. Tuchi
United States District Judge